UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILSON IROANYAH and JOY IROANYAH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 09 C 94 |
| vs. | ) | |
| | ) | Judge Feinerman |
| BANK OF AMERICA, N.A., a national banking | ) | |
| association, BANK OF NEW YORK MELLON f/k/a The | ) | |
| Bank of New York, as Trustee for TBW Mortgage Pass- | ) | |
| Through Certificates, Series 2007-1, GREEN TREE | ) | |
| SERVICING, LLC, a Delaware limited liability company, | ) | |
| MORTGAGE ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., a Delaware corporation, TAYLOR, | ) | |
| BEAN & WHITAKER MORTGAGE CORP., a Florida | ) | |
| corporation, and JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In November 2006, Plaintiff Wilson Iroanyah received loans from Defendant Taylor

Bean & Whitaker Mortgage Corporation ("TBW") for $192,000 ("First Loan") and $36,000

("Second Loan"). Both loans were secured by mortgages on a home belonging to Wilson and

his wife, Plaintiff Joy Iroanyah. TBW assigned the Second Loan to Defendant Bank of America,

N.A. ("BOA"), and Defendant Bank of New York Mellon ("BNY") acquired the First Loan

following TBW's bankruptcy. Defendant Green Tree Servicing, LLC, services the Second Loan,

and Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a nominee

mortgagee on both loans.

The Iroanyahs filed this action seeking rescission of the loans and statutory damages

under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. The Iroanyahs have moved

for summary judgment.  Doc. 82.  BOA and Green Tree together have moved for summary

judgment or, in the alternative, for the court to establish reasonable rescission procedures.  Doc.

76.  BNY and MERS filed a motion similar to the one filed by BOA and Green Tree.  Doc. 79.

All three summary judgment motions are granted in part and denied in part.

### Background

The following facts are undisputed or indisputable, except where noted.  The Iroanyahs

are a married couple who reside in a single family home in Illinois.  Wilson is the home's sole

owner.  On November 16, 2006, Wilson entered into agreements with TBW for the First Loan, a

30-year loan for $192,000, and the Second Loan, a 15-year loan for $36,000.  The loans were

secured by mortgages on the home.  At the closing, the Iroanyahs received certain documents,

two categories of which are relevant here.

First, the Iroanyahs received at least one copy of a Notice of the Right to Cancel under

TILA for each loan.  The Iroanyahs contend that they received only one copy of the Notice for

each loan, while Defendants contend that the Iroanyahs received two copies for each loan.  The

Iroanyahs signed written acknowledgments on the Notices that they received two copies of the

Notice for each loan.  Doc. 77 at 55; Doc. 93 at ¶ 11; Doc. 94 at ¶ 25.

Second, the Iroanyahs received a Truth-In-Lending Disclosure Statement for each loan.

For the First Loan, the section of the Disclosure Statement labeled "Your Payment Schedule

Will Be" had two rows, with the first row indicating that there would be 359 payments of

$1,261.30 and the second row indicating that there would be one payment of $1,265.45.  In a

column labeled "When Payments Are Due," the Disclosure Statement said "1/1/2007" in the row

indicating 359 payments of $1261.30 and "12/1/2036" in the row indicating one payment of

$1265.45.  Doc. 84-9.  The "Your Payment Schedule Will Be" section of the Disclosure

Statement for the Second Loan also had two rows, with the first row indicating that there would be 179 payments of $306 and the second row indicating that there would be one payment of $29,397.53. In the "When Payments Are Due" column, the Disclosure Statement said "1/1/2007" in the row indicating 179 payments of $306 and "12/1/2021" in the row indicating one payment of $29,397.53. Doc. 84-10. Neither Disclosure Statement says that the payments were to be made monthly, and neither lists each individual payment date. Wilson testified, however, that he understood that the payments were to be made monthly. Doc. 77 at 20-21; Doc. 93 at ¶ 9.

The Iroanyahs stopped making payments on both loans in April 2008. On August 27, 2008, TBW filed a foreclosure action on the First Loan against the Iroanyahs in state court. BNY was substituted for TBW as the plaintiff in the state case, which has been stayed pending the outcome of this litigation. On September 2, 2008, the Iroanyahs (through counsel) sent a rescission notice to TBW saying that they were exercising their right to rescind the First Loan, with the justification being that the Disclosure Statement did not set forth a complete payment schedule. Doc. 84-11. By letter dated September 22, 2008, TBW denied any TILA violation, but agreed to a rescission, stating that "TBW has begun the process to release its security interest per your client's request." Doc. 89-3 at 5-6. The letter said that to accomplish a rescission, the Iroanyahs first had to tender $169,015.30, which according to TBW was the principal balance minus the principal, interest, and closing costs that the Iroanyahs had paid.

In a letter dated September 23, 2008, the Iroanyahs refused TBW's offer. *Id*. at 8-9. They maintained that TILA's rescission procedures provide that a creditor may demand tender from a borrower only after releasing its security interests and returning to the borrower all interest payments and charges that the borrower had paid. The Iroanyahs also maintained that

rescission was justified on the independent ground that Wilson was provided only one Notice rather than two.  Finally, the Iroanyahs asked TBW for a response to their rescission notice on the Second Loan, which was materially identical to the rescission notice for the First Loan and which had been sent to TBW as well to BOA because BOA by then had acquired an interest in the Second Loan.  Doc. 84-12.  Nothing in the record indicates that BOA or TBW ever responded to the rescission notice regarding the Second Loan.

The Iroanyahs filed this action in January 2009, alleging that they are entitled to rescission and statutory damages under TILA.  TBW filed for bankruptcy in August 2009, resulting in a stay of the proceedings as to that defendant only.  Docs. 50, 57.  The case continued as to the remaining parties, who all filed summary judgment motions.  Their various arguments are considered below.

## Discussion

### I.     Green Tree and MERS

Green Tree and MERS contend that as a servicer of one loan and nominee mortgagee on both loans, respectively, they are not the loans' originators or assignees and therefore cannot be held liable for damages under TILA.  The Iroanyahs do not dispute these contentions, and Green Tree and MERS have the law on their side.  *See* 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from the consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."); *Kesten v. Ocwen Loan Servicing, LLC*, 2012 WL 426933, at *4-5 (N.D. Ill. Feb. 9, 2012) (rejecting liability against the loan servicer); *Pagtalunan v. Reunion Mortg. Inc.*, 2009 WL 961995, at *3 (N.D. Cal. Apr. 8, 2009) (rejecting liability against the nominee);

*Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695, 699 (N.D. Ill. 2008) (rejecting liability against the loan servicer).

Although Green Tree and MERS are safe from damages under TILA, they should remain parties to this litigation. If the Iroanyahs obtain rescission—a matter that, as shown below, is not yet resolved—Green Tree may be prohibited from reporting adverse information to credit bureaus, and MERS may be subject to an order requiring the mortgages' release to be recorded. Accordingly, Green Tree and MERS are entitled to summary judgment on the Iroanyahs' damage claims, but they are not dismissed from the case. *See Stewart v. BAC Home Loans Servicing, LP*, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011) (declining to dismiss MERS given the possibility of rescission).

## II.  The Alleged Disclosure Statement and Notice Violations

The Iroanyahs' two loans indisputably are subject to TILA. "TILA was intended to ensure that consumers are given 'meaningful disclosure of credit terms' and to protect consumers from unfair credit practices." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). Among other things, TILA "requires the creditor to provide the consumer with 'clear[] and conspicuous[]' notice of his right to rescind … within three business days following the transaction." *Id.* at 964 (citing 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(1)) (alterations in original). "Regulation Z, issued by the Federal Reserve Board to implement TILA, elaborates on this rule by requiring the lender to give the consumer *two* copies of the notice of his three-day right to cancel at closing." *Id.* at 964-65 (citing 12 C.F.R. § 226.23(b)(1)). TILA also requires the creditor to provide a Disclosure Statement disclosing, among other things, "the number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6); *see also Hamm v.*

*Ameriquest Mortg. Co.*, 506 F.3d 525, 528-31 (7th Cir. 2007); 12 C.F.R. § 226.18(g)(1); 12 C.F.R. § 226.23(a)(3) n.48.

If the creditor fails to comply with these notice and disclosure requirements, the rescission period is extended from three business days to three years. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); *Marr*, 662 F.3d at 965; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). Failure to provide the necessary notices and disclosures also gives rise to a claim for damages against the creditor. *See* 15 U.S.C. § 1640(a). Rescission and damage claims may be brought in the same action. *See id.* § 1635(g). Although a three-year limitations period governs rescission claims based on a failure to comply with TILA's notice and disclosure requirements, a damage claim must be brought within one year of the alleged violation. *See id.* § 1640(e).

The Iroanyahs seek statutory damages and rescission for TBW's failure to provide them with the required number of Notices and failure to include a payment schedule on the Disclosure Statements. Those alleged violations took place at the November 2006 closing, and the Iroanyahs did not file this suit until January 2009, more than one year but less than three years later. Accordingly, the rescission claims are timely, but the damage claims are barred by the one-year statute of limitations. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (the one-year limitations period "began to run when the plaintiffs executed their loan documents, because they could have discovered the alleged disclosure violations and discrepancies at that time"); *Taggart v. Chase Bank USA, N.A.*, 353 F. App'x 731, 732 (3d Cir. 2009) (same).

In an attempt to avoid the one-year limitations period, the Iroanyahs contend that when a single lawsuit seeks both damages and rescission, the three-year limitations period applicable to

the rescission claim also governs the damage claim. In support, they cite § 1635(g), which

provides:

> In any action in which it is determined that a creditor has violated this
> section, in addition to rescission the court may award relief under section
> 1640 [governing damages] of this title for violations of this subchapter not
> relating to the right to rescind.

15 U.S.C. § 1635(g). The Iroanyahs note that *McIntosh v. Irwin Union Bank & Trust Co.*, 215

F.R.D. 26 (D. Mass. 2003), interpreted § 1635(g) to provide not only that a consumer may seek

rescission and damages in a single suit, but also that all claims in such a suit, including the

damage claim, are governed by the three-year statute of limitations. *Id.* at 30.

The court respectfully disagrees with the interpretation of § 1635(g) set forth in

*McIntosh*. Nothing in the text of § 1635(g) speaks to the statute of limitations or indicates any

intent to modify the one-year limitations period for damage claims set forth in § 1640(e); all

§ 1635(g) says is that TILA plaintiffs seeking rescission also may seek damages. *See Andrews v.*

*Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008) ("Section 1635(g) is a simple remedial

cross-reference; it provides that rescission plaintiffs may also seek damages under § 1640. It

does no more."). It therefore is not surprising that most courts considering the issue have

rejected the notion that damage claims in a suit seeking rescission and damages are subject to a

three-year limitations period. *See, e.g., Cocroft v. HSBC Bank USA, NA*, 2011 WL 1630142, at

\*2 (N.D. Ill. Apr. 27, 2011); *Vietor v. Commonwealth Land Title*, 2010 WL 545856, at \*3 (N.D.

Cal. Feb. 11, 2010); *Douglas v. Wilmington Fin., Inc.*, 2009 WL 3852458, at \*2 (N.D. Ill. Nov.

18, 2009); *Cazares v. Household Fin. Corp.*, 2005 WL 6418178, at \*9 (C.D. Cal. July 26, 2005);

*Brown v. Nationscredit Fin. Servs. Corp.*, 349 F. Supp. 2d 1134, 1136-37 (N.D. Ill. 2005); *Bell v.*

*Ameriquest Mortg. Co.*, 2004 WL 2973819, at \*1 (N.D. Ill. Nov. 30, 2004); *Jenkins v.*

*Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002) ("TILA violations that are subject to the one year statute cannot be overcome merely by linking them to a rescission claim."). This court does so as well.

Although the rescission claims based on the alleged Notice and Disclosure Statement violations are timely, the claims can proceed only if there actually was a violation. The record does not indisputably answer, one way or the other, whether the Iroanyahs received two copies of the Notice for each loan at the closing—Defendants point to the Iroanyahs' written acknowledgment that they received two copies, while the Iroanyahs point to evidence that the envelope they received at the closing contained only one copy. Doc. 93 at ¶¶ 10-11. It follows that neither side is entitled to summary judgment on the question whether a Notice violation occurred. *See Marr*, 662 F.3d at 968 (holding on a similar factual record that the district court erred in granting summary judgment).

The record evidence does establish, however, that there was a Disclosure Statement violation. It is beyond dispute that the Disclosure Statements state the number of payments, the payment amounts, and the due date for the initial payment of each amount, but that they do not indicate either the frequency of payments or the specific due date for each individual payment. In *Hamm v. Ameriquest Mortg. Co.*, *supra*, the Seventh Circuit held that TILA requires a Disclosure Statement *either* to list the due date for each individual payment *or* to indicate the frequency of payments (*e.g.*, "monthly"). 506 F.3d at 528-31. Applying that standard, the Seventh Circuit held that disclosure statements materially identical to those here violated TILA even though borrowers generally would understand, without being expressly told by a disclosure statement, that monthly payments were required. *Ibid*. It follows that the Disclosure Statements

-8-

here violate TILA, and therefore that the Iroanyahs had three years in which to exercise their rescission rights. *See Stewart*, 2011 WL 862938, at *7.

Having established that the Iroanyahs had an extended right of rescission, the court proceeds to address four subsidiary issues: (1) whether the Iroanyahs' rescission notices voided the creditors' security interests; (2) whether the court should condition rescission, including the creditors' release of their security interests, on the Iroanyahs' tender of the amounts owed on the loans; (3) if the court requires the Iroanyahs to tender, whether they should be permitted to tender in installments over the original loan period; and (4) if the court rejects installment payments, whether the case should be dismissed due to the Iroanyahs' present inability to tender.

### A. Whether the Security Interests Were Voided When the Iroanyahs Sent the Rescission Notices

Rescission unwinds the rescinded transaction, with each side returning whatever it received from the other to restore the *status quo ante*. As the Seventh Circuit recently put it, rescission "is a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor." *Marr*, 662 F.3d at 966 (internal quotation marks omitted); *see also Andrews*, 545 F.3d at 573 (describing rescission as "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually, the loan proceeds)"); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 765-66 (7th Cir. 2006); *Jefferson v. Sec. Pac. Fin. Servs., Inc.*, 161 F.R.D. 63, 69 (N.D. Ill. 1995).

Section 1635(b), which governs the rescission process under TILA, provides:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security

interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b). Put simply, § 1635(b) establishes default procedures that govern TILA rescissions; those procedures require the creditor to release its security interest and to return all of the borrower's payments before the borrower is required to tender. The statute, however, allows those default procedures to be modified by court order. Regulation Z sets forth the same default procedures and the same proviso allowing a court to modify those procedures:

> (d)    Effects of rescission.
>
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor … .

(4) The procedures outlined in paragraphs (d)(2) and (3) of this
section may be modified by court order.

12 C.F.R. § 226.23(d).

The Iroanyahs argue at certain points of their summary judgment papers that the
creditors' security interests in their home became void once the rescission notices were sent.
Doc. 83 at 6-7; Doc. 91 at 12-13.  At other points, the Iroanyahs appear to concede that the
security interests may remain intact until the tenders are made.  Doc. 91 at 19 ("Plaintiffs do not
object to certain modifications of the tender process sought by the Defendants[,] including no
objection to the Defendants holding a release of their mortgages until the tender amount is
satisfied … .").  Putting this apparent concession aside, a borrower's mere issuance of a
rescission notice does not, by itself, void a creditor's security interest.  As the Ninth Circuit
explained: "[I]t cannot be that the security interest vanishes immediately upon the giving of
notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA
violations, whether or not the lender had actually committed any."  *Yamamoto v. Bank of N.Y.*,
329 F.3d 1167, 1172 (9th Cir. 2003); *see also Large v. Conseco Fin. Servicing Corp.*, 292 F.3d
49, 54-55 (1st Cir. 2002); *Zimmerman v. Logemann*, 2011 WL 1674956, at *10 (W.D. Wis. Mar.
17, 2011).

Although some courts take a different view, *e.g.*, *Stone v. Mehlberg*, 728 F. Supp. 1341,
1348 (W.D. Mich. 1989), the Ninth Circuit is correct.  Section 1635(b) states that "[w]hen an
obligor exercises his right to rescind … any security interest … becomes void *upon such a
rescission*."  15 U.S.C. § 1635(b) (emphasis added).  Similarly, Regulation Z says that "[w]hen a
consumer *rescinds a transaction*, the security interest giving rise to the right of rescission
becomes void."  12 C.F.R. § 226.23(d)(1) (emphasis added).  The emphasized statutory and

regulatory texts convey that the security interest becomes void only when rescission actually

takes place, meaning when the rescission is completed, which does not occur immediately upon

the sending of a rescission notice. A rescission notice is invalid, and thus cannot possibly

effectuate a complete rescission, unless it is timely and unless the creditor did something that

actually gives the borrower a right to rescind. "[T]he security interest 'becomes void' only when

the consumer 'rescinds' the transaction. In a contested case, this happens when the right to

rescind is determined in the borrower's favor," not upon the mere sending of a rescission notice.

*Yamamoto*, 329 F.3d 1167; *see also Large*, 292 F.3d at 55 ("If a lender disputes a borrower's

purported right to rescind, the designated decision maker … must decide whether the conditions

for rescission have been met. Until such decision is made, the [borrowers] have only advanced a

claim seeking rescission.").

It is true that § 1635(b) says that "[w]ithin 20 days after receipt of a notice of rescission,

the creditor shall … take any action necessary or appropriate to reflect the termination of any

security interest created under the transaction." 15 U.S.C. § 1635(b). The fact that the creditor

quickly must take action to reflect the security interest's termination does not, however, mean

that the security interest is terminated upon the sending of the notice. Instead, it means that the

rescission *process* must commence quickly, which in turn means that the rescission itself does

not occur immediately. This is made clear by the Federal Reserve Board's Official

Commentary, which binds the court unless found to be "demonstrably irrational." *Ford Motor*

*Co. v. Milhollin*, 444 U.S. 555, 565 (1980). The relevant portion of the Official Commentary

says: "The 20-day period for the creditor's action refers to the time within which the creditor

must begin the process. It does not require all necessary steps to have been completed within

that time, but the creditor is responsible for seeing the process through to completion." 12

C.F.R. pt. 226, Supp. I, ¶ 23(d)(2).  That is the only sensible interpretation of the statute given

that it allows a court to modify the default rescission procedures.  *See* 15 U.S.C. § 1635(b) ("The

procedures prescribed by this subsection shall apply except when otherwise ordered by a

court.").  There would be no time for the court to modify those procedures if rescission is

completed immediately upon the sending of a rescission notice.  As one court explained:

> Because § 1635(b) merely prescribes 'procedural requirements' that a
> district court may adapt at its discretion, it is clear that mere notice of intent
> to rescind does not trigger a lender's obligation to effect rescission
> immediately given that a lender cannot know with certainty *ex ante* whether
> a court will deny rescission or modify the procedure for effecting
> rescission.  In other words, § 1635(b) cannot, at once, be a set of default
> procedures a court may equitably alter after a borrower's notice of intent to
> rescind and, at the same time, require a lender to effect rescission
> immediately upon receiving such notice.

*Bradford v. HSBC Mortg. Corp.*, 2012 WL 706379, at *6 (E.D. Va. Mar. 5, 2012).

## B.    Judicial Modification of Rescission Procedures

As noted above, the default procedures under § 1635(b) and Regulation Z require the

creditor to release its security interest and return all of the borrower's payments before the

borrower is required to tender.  The question here is whether the court should exercise its

discretion under the statute to modify the rescission procedures to require the Iroanyahs to tender

before the security interests are released and before the creditors are required to return the

Iroanyahs' payments.

Courts have modified the default procedures in precisely that way, *e.g.*, *Yamamoto*, 329

F.3d at 1173; *FDIC v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir. 1991); *AFS Fin., Inc. v.

Burdette*, 105 F. Supp. 2d 881, 881-82 (N.D. Ill. 2000), and have referenced such modifications

with approval, *e.g.*, *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 116 (D.D.C. 2011);

*Velazquez v. HomeAmerican Credit, Inc.*, 254 F. Supp. 2d 1043, 1047 (N.D. Ill. 2003);

*Personius v. HomeAmerican Credit, Inc.*, 234 F. Supp. 2d 817, 819 (N.D. Ill. 2002).  A leading treatise notes that "[t]oday, the vast majority of cases appear to condition rescission on consumer tender almost as a matter of course … ."   Pridgen & Alderman, Consumer Credit and the Law § 14:27 (updated Oct. 2011) (citing cases).  And the Seventh Circuit recently suggested in passing that rescission will not occur if the borrower cannot return the loan principal.  *See Marr*, 662 F.3d at 966 ("The rescinding borrower must return the loan principal; this requirement often has the practical effect of ruling out rescission, if the borrower has already used the money to cover urgent financial obligations.").  This makes perfect sense, as it would be inequitable to require a creditor to release its security interest and return the borrower's payments if it appears that the creditor might not receive back the principal.  For these reasons, and particularly because the Disclosure Statement violations caused no tangible harm—Wilson testified that he understood that monthly payments were required—the court exercises its discretion to modify the rescission procedures to require the Iroanyahs to tender before the creditors release their security interests and take the other steps required by § 1635(b) and Regulation Z.

The parties dispute the amounts that the Iroanyahs must tender on each loan.  BNY contends that $169,015.30 must be tendered on the First Loan; BNY arrives at this figure by subtracting from the unpaid principal balance ($189,238.93) the fees ($2,741.60) and interest ($17,482.03) that the Iroanyahs paid on that loan.  Doc. 80 at ¶¶ 28-30.  BOA contends that $30,037.10 must be tendered on the Second Loan; BOA arrives at this figure by subtracting from the unpaid principal balance ($35,484.80) the fees ($575.90) and interest ($4,871.80) that the Iroanyahs paid on that loan.  Doc. 77 at ¶¶ 16-17.  In their Local Rule 56.1(b)(3) statements, the Iroanyahs admitted most of these figures and failed to properly dispute the remainder.  Doc. 93 at ¶¶ 16-17; Doc. 94 at ¶¶ 28-30.  However, in their summary judgment motion, the Iroanyahs

provided different figures—$3,667.16 in unspecified fees on the First Loan, $20,258 in payments made on the First Loan, a principal balance of $192,000 on the First Loan, $2,771 in payments made on the Second Loan, and a principal balance of $36,000 on the Second Loan. Doc. 83 at 9, 13. Those figures are disregarded because they find no support in the Iroanyahs' Local Rule 56.1(a)(3) statement and also because they are contradicted by admissions in the Iroanyahs' Local 56.1(b)(3) responses. *See Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 965-66 (N.D. Ill. 2007) ("Where a party has offered … a statement of fact without offering proper evidentiary support, the Court will not consider that statement.").

It is not necessary to resolve any genuine disputes of material fact to calculate the tender amounts, so the calculations will be made here. Disregarding the possibility of TILA damages, BNY and BOA correctly calculated the tender amounts by subtracting finance charges and fees paid from the remaining loan principal. *See Nejo v. Wilshire Credit Corp.*, 2010 WL 2951972, at *1 (S.D. Cal. July 21, 2010); *Santos v. U.S. Bank N.A.*, 716 F. Supp. 2d 970, 976 (E.D. Cal. 2010); *FDIC v. Martinez*, 1997 WL 1764757, at *3-4 (S.D. Ohio June 12, 1997); *In re Lynch*, 170 B.R. 26, 30 (Bankr. D.N.H. 1994). As explained in Section III, *infra*, the tender amounts for each loan are reduced by $4000 to account for statutory damages arising from violations involving deficiencies in the creditors' response to the rescission notices; the tender amount for the First Loan is reduced by an additional $2800 to account for actual damages arising from those violations. This leaves tender amounts of $162,215.30 for the First Loan and $26,037.10 for the Second Loan.

**C.     Whether the Iroanyahs May Tender in Installments or Whether They Must Do So in Full**

The Iroanyahs argue that the court should allow the tenders to take place in monthly installments over the life of the original loans. The argument is unpersuasive. Imposing such an installment plan would have the practical effect of reforming the loans on far more favorable terms—no interest would be paid—not rescinding them. And even if the installment plan somehow could be considered a rescission rather than a reformation, the terms would be inequitable and thus unacceptable. Rescission under TILA is an equitable remedy. *See Rachbach v. Cogswell*, 547 F.2d 502, 505 (10th Cir. 1976). The Iroanyahs concede that the Notice and Disclosure Statement violations did them no actual harm; despite the TILA violations, they understood the payment terms and their right to rescind. Although hyper-technical violations can give rise to a TILA action, *see Marr*, 662 F.3d at 964; *Hamm*, 506 F.3d at 529; *Handy*, 464 F.3d at 764, it would be unfair under the circumstances to require the creditors to accept far less than the benefit of their bargain. So, while the Iroanyahs are entitled to unwind the transactions if they can, they may not obtain what would amount to an interest-free or reduced-interest loan over the original repayment period.

Some reported cases permit borrowers to tender in installments, but those cases are unpersuasive. One case required the borrower to pay interest along with installment payments, *see In re Sterten*, 352 B.R. 380, 388-89 (Bankr. E.D. Pa. 2006), which effectively restored rather than rescinded the loan. Still other cases do not explain how a long-term installment plan can fairly be called rescission rather than reformation. *See Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1308 (D. Del. 1990); *Mayfield v. Vanguard Sav. & Loan Ass'n*,

710 F. Supp. 143, 149 (E.D. Pa. 1989); *In re Bell*, 314 B.R. 54, 61-62 (Bankr. E.D. Pa. 2004).

The court respectfully declines to follow those cases.

### D.      The Timing of the Tenders

The Iroanyahs concede that they are not currently able to make their tenders. Defendants

argue that this makes rescission impossible, warranting summary judgment in their favor, while

the Iroanyahs (as a fallback to their request for an installment plan) ask for six months to obtain

new financing to pay the tenders. Defendants counter that the Iroanyahs, given their present

financial situation, cannot possibly obtain the necessary financing. The record indicates that the

Iroanyahs' financial situation may make it difficult for them to obtain financing, but the court

cannot say that it would be impossible. Accordingly, exercising its equitable discretion, the

court will not require the Iroanyahs to make their tenders immediately.

The question then becomes how much time the Iroanyahs should be given. The

Iroanyahs request six months and Defendants suggest thirty days, but neither side provides a

particularly compelling reason for its figure. Some courts that condition TILA rescission on the

borrower's tender require an immediate tender, *see*, *e.g.*, *Am. Mortg. Network, Inc. v. Shelton*,

486 F.3d 815, 821 (4th Cir. 2007) (affirming the district court's judgment for the creditor when

the borrower could not tender, but noting that it may have been better to give the borrower time

to tender), while others grant the borrower two months, *see*, *e.g.*, *Yamamoto*, 329 F.3d at 1169,

1172-73, or even a year, *see*, *e.g.*, *Hughes*, 938 F.2d at 890. Under the circumstances, the court

concludes that three months is an appropriate deadline—thirty days would be too short for most

borrowers, while six months would be too long, for if the Iroanyahs cannot obtain refinancing in

three months, it is unlikely they could do so in six. The Iroanyahs shall report to the court by

June 14, 2012, whether they succeeded in obtaining the funds necessary to make the tenders. If

they succeed, the court will order a rescission on the terms set forth above; if they do not

succeed, the court will enter judgment for Defendants on the rescission claims. *See Yamamoto*,

329 F.3d at 1169, 1172-73 (affirming district court's dismissal of the plaintiff's TILA claim

where the plaintiff was given 60 days to tender but failed to do so).

## III. The Alleged Rescission Response Violations

The next set of issues concern whether Defendants failed to properly respond to the

Iroanyahs' rescission notices and, if so, what damages should be assessed. As noted above,

TILA sets forth the default rule that the creditor, "[w]ithin 20 days after receipt of a notice of

rescission, … shall return to the [borrower] any money or property given as earnest money,

downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the

termination of any security interest created under the transaction." 15 U.S.C. § 1635(b); *see also*

12 C.F.R. § 226.23(d)(2). The Official Commentary explains that the monies the creditor must

return include finance charges, broker fees, application and commitment fees, and title search or

appraisal fees. *See* 12 C.F.R. pt. 226, Supp. I, ¶ 23(d)(2) ("Any amounts of this nature already

paid by the consumer must be refunded [upon receipt of a valid rescission notice]. 'Any

amount' includes finance charges already accrued, as well as other charges, such as broker fees,

application and commitment fees, or fees for a title search or appraisal, whether paid to the

creditor, paid directly to a third party, or passed on from the creditor to the third party. It is

irrelevant that these amounts may not represent profit to the creditor.").

A creditor's failure to properly respond to a valid rescission notice gives rise to a damage

claim. *See Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005); *Smith v. Fid.*

*Consumer Disc. Co.*, 898 F.2d 896, 903 (3d Cir. 1990); *In re Smith*, 737 F.2d 1549, 1552 (11th

Cir. 1984); *Lippner*, 544 F. Supp. 2d at 704-05. The one-year limitations period for such claims,

*see* 15 U.S.C. § 1640(e), commences on the date of the alleged violation, which is the date that

the creditor's twenty days to respond expires. *See Belini*, 412 F.3d at 26; *Velazquez*, 254 F.

Supp. 2d at 1048. The Iroanyahs sent their rescission notices in September 2008 and filed suit in

January 2009, so these damage claims are timely.

As noted above, the Iroanyahs' attorney sent one rescission notice to TBW regarding the

First Loan and a second rescission notice to TBW and BOA regarding the Second Loan.

Nothing in the record indicates that BOA or TBW responded or took any action within twenty

days of receiving the second rescission notice. Under the plain terms of 15 U.S.C. § 1635(b) and

12 C.F.R. § 226.23(d)(2), this violated TILA; BOA does not argue otherwise.

The First Loan presents a more difficult question. TBW (into whose shoes BNY has

stepped) responded to the Iroanyahs' rescission notice within twenty days. TBW denied

violating TILA; it did offer to rescind the loan, but only if the Iroanyahs tendered first. TBW did

not return any finance charges, broker fees, application and commitment fees, and title search or

appraisal fees that the Iroanyahs had paid, contrary to TILA's mandate. These circumstances

present the question whether a creditor is liable for damages when it responds to a rescission

notice within twenty days, but fails to take all the required actions because it believes that there

was no TILA violation and therefore that the rescission notice is invalid. The answer to that

question, at least on the present facts, is "yes." For the following reasons, even where the

creditor responds to a rescission notice and contests the alleged TILA violation within the

twenty-day period, the creditor is liable in damages if it fails to take all the steps required by

§ 1635(b) and Regulation Z, unless it seeks a court order modifying the rescission process during

those twenty days, or unless the rescission notice is invalid.

-19-

The court "must presume that a legislature says in a statute what it means and means in a statute what it says." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002). The plain language of § 1635(b) requires that the creditor take certain specific actions within twenty days of receiving a rescission notice. It is true that the creditor need not take those actions where the rescission notice is invalid, which can occur if the rescission notice incorrectly maintains, for example, that the Disclosure Statement was insufficient or that the required number of Notices were not provided. *See Belini*, 412 F.3d at 25 ("Of course, where the debtor's notice of rescission is invalid—for example, where the creditor has not actually failed to satisfy a material disclosure requirement that would entitle the debtor to rescind—then no damages can be assessed against the creditor for failing to respond to the notice."); *Velazquez*, 254 F. Supp. 2d at 1047 n.1 ("Obviously a debtor who lacks the legal right to rescind cannot construct a TILA violation from the creditor's failure to honor the debtor's extra-legal rescission demand."). But the Iroanyahs' rescission notice was valid and well-founded.

It also is true that the default rescission procedures set forth in § 1635(b) are subject to judicial modification, and that the court has modified those procedures in this case. But the court's decision to do so does not retroactively excuse TBW's failure to comply with the Iroanyahs' valid rescission notice during the original twenty-day window. This point was made in *Velazquez*, where (as here) the creditor responded to the rescission notice by contesting the grounds for rescission while also offering to rescind if the borrower tendered first:

> TILA allows the rescission procedures contained therein—including the provisions fixing the order performance—to be modified *by court order*. …
> [E]ven if we conclude that [the borrower] had the right to rescind …
> something we assume to be true at this point—equity may require that we order [the borrower] to return the money simultaneous with [the creditor's] release of its security interest. But neither the statute nor the regulations permit a creditor unilaterally to impose its will upon the process, which is

-20-

essentially what [the creditor] tried to do by making [the borrower] pay
before it rescinded the loan.

*Id*. at 1047. Thus, if TBW wanted a reprieve from the twenty-day obligations imposed by

§ 1635(b) and Regulation Z, it had to seek a court order during that time frame. *See In re*

*Webster*, 300 B.R. 787, 801-02 (Bankr. W.D. Okla. 2003) (relieving the creditor from liability

for failing to take the actions required by § 1635(b) where it filed a declaratory judgment suit

seeking modified rescission procedures within twenty days of receiving a rescission notice).

TBW did not do so. Instead, it attempted "unilaterally to impose its will upon the process," an

option TILA does not permit. *Velazquez*, 254 F. Supp. 2d at 1047.

BNY contends that because TBW assigned the loan to a trust, BNY cannot be held liable

for failing to properly respond to the Iroanyahs' rescission notice because the original disclosure

violations (the grounds for the rescission) were not apparent on the face of the Disclosure

Statements. There is a split in this District on this issue, with some judges interpreting 15 U.S.C.

§ 1641(a) to hold that an assignee can be held liable only if the original disclosure violations

were apparent on the face of the Disclosure Statements, and other judges holding that an

assignee can be held liable regardless of whether there was a facial violation. *Compare*, *e.g.*,

*Garcia v. HSBC Bank USA, N.A.*, 2009 WL 4730961, at *4-5 (N.D. Ill. Dec. 7, 2009) (no facial

violation required), *with*, *e.g.*, *Bills v. BNC Mortg., Inc.*, 502 F. Supp. 2d 773, 776 (N.D. Ill.

2007) (facial violation required); *and Walker v. Gateway Fin. Corp.*, 286 F. Supp. 2d 965, 969

(N.D. Ill. 2003) (same).

There is no need to choose sides here, as the TILA violation was apparent on the face of

the Disclosure Statements. Section 1641(a) states that "a violation apparent on the face of the

disclosure statement includes, but is not limited to (1) a disclosure which can be determined to

be incomplete or inaccurate from the face of the disclosure statement or other documents

assigned, or (2) a disclosure which does not use the terms required to be used by this

subchapter." 15 U.S.C. § 1641(a). The fact that the Disclosure Statements provided to the

Iroanyahs did not set forth the "due dates or period of payments scheduled to repay the total of

payments," *id*. § 1638(a)(6), could be determined from "the face" of the Disclosure Statements

within the meaning of the first example cited in § 1641(a). The second example applies as well,

as the Disclosure Statements did not "use the terms required to be used." This conclusion is

confirmed by the Official Commentary, which elaborates as follows on the "due dates or periods

of payment" requirement of § 1638(a)(6):

> To meet this requirement, creditors may list all of the payment due dates.
> They also have the option of specifying the "period of payments" scheduled
> to repay the obligation. As a general rule, creditors that choose this option
> must disclose the payment intervals or frequency, such as "monthly" or "bi-
> weekly," and the calendar date that the beginning payment is due. For
> example, a creditor may disclose that payments are due "monthly beginning
> on July 1, 1998." This information, when combined with the number of
> payments, is necessary to define the repayment period and enable a
> consumer to determine all of the payment due dates.

12 C.F.R. Pt. 226, Supp. I, ¶ 18(g)(4)(I). It is beyond dispute that the Disclosure Statements did

not use all of the terms required by § 1638(a)(6). *See Hamm*, 506 F.3d at 528-30 (holding that a

materially identical disclosure statement did not use the terms or format required by TILA).

Accordingly, even if TILA allows assignees to be held liable only if the disclosure violations are

apparent on the face of the disclosure statement, BNY may be held liable here.

The final question concerns the amount of damages the Iroanyahs should be awarded for

the violations. Section 1640(a)(2)(A)(iv) permits statutory damages of between $400 and $4000

for violations of § 1635(b) involving loans secured by real property or a dwelling. 15 U.S.C.

§ 1640(a)(2)(A)(iv). The Iroanyahs seek statutory damages of $4000 for the failure to properly

respond to the rescission notice on the First Loan, and the same amount for the Second Loan.
Doc. 83 at 10-11. Defendants do not dispute that $4000 is an appropriate statutory damage for
each violation, Doc. 85 at 4-5; Doc. 89 at 4-12, thus forfeiting any objection to that figure. *See
Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011);
*Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [a legal
issue] in his brief opposing summary judgment, he lost the opportunity to urge it in both the
district court and in this court."); *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)
("It is a well-settled rule that a party opposing summary judgment must inform the trial judge of
the reasons, legal or factual, why summary judgment should not be entered."). Forfeiture aside,
the maximum statutory damage figure plainly is warranted for the Second Loan because no
action at all was taken on the rescission notice associated with that loan. A $4000 statutory
damage award also is warranted for the First Loan because TBW denied that its Disclosure
Statement violated TILA even though *Hamm*, which the Seventh Circuit had decided eleven
months earlier, made perfectly clear that there was a violation. As noted in Section II.B, *supra*,
these statutory damages are being applied to reduce by $4000 the tender amount on each loan.

The Iroanyahs also seek actual damages consisting of the $2,800 in attorney fees they
incurred defending the foreclosure action on the First Loan. Doc. 83 at 10. In *Lippner v.
Deutsche Bank National Trust Co.*, 2008 WL 4200654 (N.D. Ill. Sept. 9, 2008), the court held
that fees incurred in a state court foreclosure action can be recovered as actual damages in cases
where the creditor failed to properly respond to a rescission notice. *Id.* at *6-7. While
Defendants argue that no damages should be awarded because there was no TILA violation, they
do not argue that the $2800 figure would be wrong if TILA was violated and actual damages

were awarded, thus forfeiting the point. Accordingly, the court awards the Iroanyahs $2800 in actual damages, and applies that amount to reduce by $2800 the tender amount on the First Loan.

### Conclusion

For the foregoing reasons, all three summary judgment motions are granted in part and denied in part. Green Tree and MERS are granted judgment on the damage claims against them, though they are not dismissed from the case. Plaintiffs are granted judgment on the question whether the Disclosure Statements violated TILA (they did) and on whether their rescission notices were valid (they were). Defendants are granted judgment on their request to modify the rescission procedures—the Iroanyahs must make their tenders ($162,215.30 on the First Loan, and $26,037.10 on the Second Loan) to effectuate rescission, and if they fail to do so by June 14, 2012, judgment on the rescission claims will be granted to Defendants. Plaintiffs are granted judgment on the question whether Defendants failed to properly respond to the rescission notices, and are awarded $8000 in statutory damages and $2800 in actual damages; those sums have been incorporated into the tender amounts set forth above. The summary judgment motions otherwise are denied, though the Iroanyahs' motion for summary judgment regarding attorney fees and costs under 15 U.S.C. § 1640(a)(3) is denied without prejudice. If the Iroanyahs wish to pursue attorney fees and costs under § 1640(a)(3) in light of the rulings set forth above, they may file a motion under Local Rule 54.3.

March 14, 2012

_____
United States District Judge