UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILSON IROANYAH and JOY IROANYAH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 09 C 94 |
| vs. ) | |
| ) | Judge Feinerman |
| BANK OF AMERICA, N.A., a national banking ) | |
| association, BANK OF NEW YORK MELLON f/k/a The ) | |
| Bank of New York, as Trustee for TBW Mortgage Pass- ) | |
| Through Certificates, Series 2007-1, GREEN TREE ) | |
| SERVICING, LLC, a Delaware limited liability company, ) | |
| MORTGAGE ELECTRONIC REGISTRATION ) | |
| SYSTEMS, INC., a Delaware corporation, TAYLOR, ) | |
| BEAN & WHITAKER MORTGAGE CORP., a Florida ) | |
| corporation, and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In November 2006, Plaintiff Wilson Iroanyah received loans from Defendant Taylor

Bean & Whitaker Mortgage Corporation ("TBW") for $192,000 ("First Loan") and $36,000

("Second Loan"). Both loans were secured by mortgages on a home belonging to Wilson and

his wife, Plaintiff Joy Iroanyah. TBW assigned the Second Loan to Defendant Bank of America,

N.A. ("BOA"), and Defendant Bank of New York Mellon ("BNY") acquired the First Loan

following TBW's bankruptcy. Defendant Green Tree Servicing, LLC, serviced the Second

Loan, and Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") was a nominee

mortgagee on both loans. The Iroanyahs filed this action seeking rescission of the loans and

statutory damages under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.

Proceedings against TBW were stayed after its bankruptcy filing. Doc. 57. The court granted in part and denied in part the parties' cross-motions for summary judgment. 851 F. Supp. 2d 1115 (N.D. Ill. 2012). The court granted Green Tree's and MERS's summary judgment motions. *Id*. at 1120, 1131. The court granted the Iroanyahs' motion in part, declaring that the initial Disclosure Statements violated TILA and that the Iroanyahs' attempts to rescind were valid, and awarding them $8,000 in statutory damages and $2,800 in actual damages for BOA's and BNY's failure to properly respond to the rescission notices. *Id*. at 1131. The court granted summary judgment to BOA and BNY on their request to modify the rescission procedures, and the Iroanyahs were given until June 14, 2012, to tender the amounts owed on the loans, with the proviso that judgment would be granted to BNY and BOA on the rescission claim if the Iroanyahs did not tender. *Ibid*. Familiarity with the court's opinion is assumed. The court denied the Iroanyahs' motion for reconsideration. Doc. 137. And when the Iroanyahs did not tender, the court granted judgment to BOA and BNY on the rescission claim. Doc. 138.

Now before the court is the Iroanyahs' petition under 15 U.S.C. § 1640(a)(3) to recover attorney fees and costs from BOA and BNY, the only defendants found liable. Doc. 139. Defendants oppose the amount of fees sought ($71,950), but not the costs ($711.46). Docs. 140, 141. For the following reasons, the Iroanyahs are awarded $13,433.86 in fees and costs against BOA, and $16,433.85 in fees and costs against BNY.

## Discussion

A district court must award "reasonable attorney's fees" to a successful TILA plaintiff. 15 U.S.C. § 1640(a)(3); *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 261 n.34 (1975) (noting that "statutes which are mandatory in terms of awarding attorneys' fees

include ... the Truth in Lending Act"); *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 233 & n.3 (1st Cir. 1990) (fees are mandatory under TILA); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 802 (6th Cir. 1996) (same); *cf. Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 n.3 (7th Cir. 1997) (citing *de Jesus* with approval in holding that fee awards are mandatory for a successful plaintiff under the Fair Debt Collections Practices Act). As with most fee-shifting statutes, "the district court [starts by] multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (internal quotation marks and some alterations in original omitted). This starting point, called the lodestar, may then be adjusted based on the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which are addressed below. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 & n.1 (7th Cir. 2009).

## A.     Calculating the Lodestar

With respect to the hourly rate component of the lodestar, the Iroanyahs seek $375 for Charles Howell, their junior attorney, and $500 for Lloyd Brooks, their senior attorney. Doc. 139 at 6-7. Defendants do not challenge the reasonableness of Howell's hourly rate, thus forfeiting any challenge they might have had. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004) ("once the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded"). BOA does object to the $500 hourly rate proposed for Brooks. Doc. 141 at 14 n.3. None of the three grounds advanced by the Iroanyahs justify a $500 rate for Brooks.

The first ground depends on the "Laffey Matrix," which is "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States

Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett*, 664 F.3d at 649. The Laffey Matrix says that an attorney like Brooks with twelve years experience should be paid $609 per hour. The Laffey Matrix is not persuasive evidence of a reasonable hourly rate for Brooks, as it does not reflect reasonable rates charged by lawyers in this community, the Northern District of Illinois. *See id*. at 640 (where the hourly rate of an attorney is not readily available, district courts must "rely on the next best evidence of an attorney's market rate, namely evidence of rates similarly experienced attorneys *in the community* charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.") (emphasis added); *id*. at 649-50 (noting that no appeals court other than the D.C. Circuit has officially adopted the Laffey Matrix); *Thompson v. City of Chicago*, 2011 WL 2923694, at *4 (N.D. Ill. July 18, 2011) ("[W]e agree with Magistrate Judge Mason's decision to afford little weight to the Laffey Matrix. While courts in the Northern District have relied on it, it has not been formally adopted in the Seventh Circuit and its rates appear significantly higher than those typically awarded in this district.") (internal quotation marks omitted).

Second, the Iroanyahs provide a list of the fifty-six cases that Brooks has litigated in the Northern District of Illinois. Doc. 139-7. The Iroanyahs do not identify which of the cases are TILA cases, and nor do they suggest why these cases set Brooks apart from other attorneys in the area or justify a $500 hourly rate.

Third, the Iroanyahs cite numerous TILA cases in this District where fee awards were based on hourly rates between $450 and $475. These cases may support a high hourly rate for the attorneys involved in those cases, but not for Brooks. Indeed, in 2009, Brooks's client in a TILA case was awarded fees based on a $350 hourly rate. *See Lippner v. Deutsche Bank Nat.*

*Trust Co.*, 2009 WL 1406671, at *3 (N.D. Ill. May 19, 2009). At that time, Brooks had litigated

forty-four cases in this District, twelve fewer than his current roll. *Ibid*. The Iroanyahs offer no

basis for concluding that Brooks's three additional years of experience warrant an increase in his

hourly rate from $350 to $500. It follows that the $350 hourly rate recently approved in one of

Brooks's other TILA cases is better evidence of his market rate than the rates approved for other

attorneys. *See Pickett*, 664 F.3d at 640 ("We presume that an attorney's actual billing rate for

similar litigation is appropriate to use as the market rate."). But because it would be odd to

approve a higher rate for Howell, the junior attorney, than for Brooks, the senior attorney, and

because Defendants do not object to the $375 hourly rate proposed for Howell, the court will set

Brooks's hourly rate at $375. *See ibid*. ("If a fee applicant does not satisfy its burden, the district

court has the authority to make its own determination of a reasonable rate."); *Delgado v. Vill. of

Rosemont*, 2006 WL 3147695, at * 4 (N.D. Ill. Oct. 31, 2006) ("If $350.00 per hour was

reasonable in 2003, then $375.00 per hour is reasonable in 2006.").

Plaintiffs assert that 87.1 hours were devoted to work "equally supportive of claims

against each defendant," Doc. 139 at 8, and maintain that those 87.1 hours should be split

equally between BOA and BNY, as opposed to being attributed on a pro rata basis among all

five defendants, including the three (Green Tree, MERS, and TBW) not found liable. BOA and

BNY disagree, arguing that they each should be held responsible for only one-fifth of the 87.1

hours. Doc. 140 at 6-7; Doc. 141 at 9. Plaintiffs are correct. In the context of a fee award under

42 U.S.C. § 1988, the Seventh Circuit held that "when, as here, a plaintiff raises a claim for

relief that relates to several defendants, not all of whom are held liable, the total time expended

on the claim for relief should be counted in awarding the plaintiff attorney's fees so long as the

defendants from whom plaintiff did not obtain relief were not named frivolously." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1281 (7th Cir. 1983); *see also Brady v. Fort Bend Cnty.*, 145 F.3d 691, 717 (5th Cir. 1998) (same).

That principle applies here. Count I of the complaint sought relief regarding the First Loan and named BNY, MERS, and TBW as defendants. Doc. 58 at 6. Count II of the complaint sought relief regarding the Second Loan and named BOA, Green Tree, MERS, and TBW as defendants. Doc. 58 at 7. None of the defendants was named frivolously. TBW declared bankruptcy and the proceedings against it were stayed. But TBW failed to properly respond to the Iroanyahs' rescission notice on the First Loan, and its invalid Disclosure Statements were the but-for cause of both TILA violations. 851 F. Supp. 2d at 1120-22, 1127-31. Moreover, although the court granted summary judgment to Green Tree and MERS, it retained them as necessary parties in the event the Iroanyahs were able to tender and rescission was ordered. *Id.* at 1120. Their inclusion as defendants was not frivolous. Accordingly, pursuant to *Mary Beth G.*, responsibility for the 87.1 hours will be split between BOA and BNY.

BNY challenges several time entries for lacking sufficient detail. Doc. 140 at 8-9; Doc. 140-1. Lack of detail is an appropriate objection to a fee petition. *See Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738-39 (7th Cir. 2010); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010). But upon an independent review of the challenged entries, the court finds that they are sufficiently detailed to allow a determination of their reasonableness. And with the following exception, the court further finds that the time counsel spent on correspondence, discovery, and motion-drafting was reasonable. The exception is a joint entry: "Sun Sep 13, 09 - Time Entry - 0.20 hours E-mail from WILSON JOSEPH."

Doc. 139-10 at 1; Doc. 139-1 at 6. Plaintiffs do not identify Wilson Joseph, let alone explain his relationship to this case. The objection to that time entry is sustained.

BOA challenges several time entries on the ground that they provide no basis to determine whether the work was performed on the Iroanyahs' "successful claim." Doc. 141 at 9-10; Doc. 141-2; see also Doc. 140 at 4 (similar argument by BNY). Although the entries do not distinguish the hours devoted to unsuccessful claim (rescission) as opposed to the successful claim (damages), it would be an overreaction to strike the entries in their entirety, particularly given the interrelated nature of the rescission and damage claims. *See Jaffe v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998) ("when claims are interrelated … time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims"). The better course is to adjust the lodestar to account for the Iroanyahs' limited success. *See Hensley*, 461 U.S. at 430 (the results obtained by the plaintiff may warrant an downward adjustment to the lodestar).

BOA contends that the Iroanyahs should not be compensated at all for responding to BOA's successful motion to compel discovery, Docs. 66-70, as those costs could have been avoided had the Iroanyahs complied with BOA's discovery requests. Doc. 141 at 11. The pertinent time entries are as follows:

> Mon Aug 24, 09 - Time Entry - 0.20 hours Review of Correspondence re: Plaintiffs' responses to Bank of America discovery requests.
>
> Thu Sep 10, 09 - Time Entry - 0.20 hours Telephone call to Marshall Blanksenship
>
> Thu Feb 11, 10 - Time Entry - 0.20 hours Review of faxed letter from M. Blankenship re: Plaintiffs' responses to BOA discovery requests.

> Wed Feb 24, 10 -Time Entry- 1.70 hours Preparation, travel and appearance on BOA motion to compel, including participation in discovery conference.
>
> Mon Mar 8, 10 - Time Entry - 0.20 hours Review courts order status hearing.
>
> Tue Mar 16, 10- Time Entry - 1.30 hours Preparation, travel, and attendance at status hearing on discovery dispute with BOA.

Doc. 139-9 at 1-2; Doc. 139-1 at 6-7. Because the Iroanyahs could have avoided this attorney time had they complied with their discovery obligations, the hours were not reasonably expended on the litigation. The objections to these hours are sustained.

BOA also argues that the Iroanyahs' attorneys spent an excessive amount of time on two tasks: (1) Brooks spent 3.6 hours on two days in August 2009 reviewing BOA's discovery responses and drafting a letter, which BOA feels was an unreasonable amount of time in the aggregate; and (2) Brooks spent 0.30 hours to review a two-page letter from BOA. The time spent on those tasks was not excessive, so the objections to those hours is overruled.

Based on the foregoing, the lodestar is as follows:

|       | Claimed Hours | Valid Hours | Hourly Rate | Total                        |
|-------|---------------|-------------|-------------|------------------------------|
| BOA   | 30            | 26.4        | $375        | $9,900                       |
| BNY   | 42.4          | 42.4        | $375        | $15,900                      |
| Joint | 87.1          | 86.7        | $375        | $32,512.50 (16,256.25 each)  |

The total lodestar is $58,312.50. BOA's share is $26,193.75, while BNY's share is $32,118.75.

## B.  Adjusting the Lodestar

The court next determines whether the lodestar should be adjusted based on the factors set forth in *Hensley*: "(1) the time and labor required; (2) the novelty and difficulty of the

questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3. Defendants focus exclusively on the eighth factor, requesting a reduction to the lodestar to account for the Iroanyahs' limited success.

The Iroanyahs did have limited success; they sought rescission of two mortgage loans and damages, but were awarded only damages in the amount of $10,800. In *Sottoriva v. Claps*, 617 F.3d 971 (7th Cir. 2010), the Seventh Circuit further instructed that "[w]here … a plaintiff prevails on only some of his interrelated claims, … the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 975 (internal quotation marks omitted). As noted above, the court cannot identify specific hours spent by the Iroanyahs' attorneys exclusively on the unsuccessful rescission claim. Accordingly, the court will "simply reduce the award to account for the limited success." *Ibid*.

With respect to the degree of the reduction, BNY contends that "it is unreasonable for the Plaintiffs to rack up fees of over $[70],000 while pursuing a judgment in the amount of $[10],800." Doc. 140 at 5. The Seventh Circuit has rejected this sort of proportionality analysis, so the court will not apply it. *See Anderson*, 578 F.3d at 545-46 ("reject[ing] the notion that the fees must be calculated proportionally to damages," given that statutory fee-shifting provisions

signal "Congress' intent that violations of particular laws be punished") (citing cases) (internal quotation marks omitted); *Matter of Pine*, 705 F.2d 936, 938 (7th Cir. 1983) ("we do not believe that Congress, in entitling prevailing plaintiffs in Truth in Lending cases to get a reasonable attorney's fee, wanted to limit those awards rigidly to the amount of damages obtained."). Rather, considering the Iroanyahs' success on the damages claim but not the rescission claim, and the fact that the Iroanyahs would have succeeded on their rescission claim had they been able to tender, the court determines that the 50% reduction in the lodestar is appropriate. *See Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001) ("[W]e find the district court's 50 percent limited-success reduction entirely justified. Cooke requested nearly $300,000 from the jury but, after our decision today, will go home with $7,500."); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558-59 (7th Cir. 1999) (upholding the district court's 50% reduction in the lodestar due to the plaintiff's limited success in a Fair Labor Standards Act case); *LaSalvia v. City of Evanston*, 2012 WL 2502703, at *5 (N.D. Ill. June 28, 2012) (50% reduction in a § 1983 case); *DeCola v. Keel*, 2010 WL 5232972, at *2 (N.D. Ill. Dec. 16, 2010) (same); *Garcia v. Oasis Legal Fin. Operating Co.*, 608 F. Supp. 2d 975, 981 (N.D. Ill. 2009) (50% reduction in an Equal Pay Act case). The lodestar is thus reduced from $58,312.50 to $29,156.25; BOA's and BNY's respective shares of the lodestar are reduced by half as well.

## C.    Defendants' Setoff Request

BNY and BOA argue that the judgment, including any fee award, should be setoff by the amount the Iroanyahs owe them on the mortgage loans—$30,000 to BOA, and $189,238.93 to BNY. Doc. 140 at 9-11; Doc. 141 at 14. Defendants argue that Illinois law entitles them to a setoff. *See Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188 (7th Cir. 2011). Illinois law

provides that when a party seeks a setoff against "the same plaintiff who filed suit against him," the setoff claim is "subsumed procedurally under the concept of a counterclaim." *Thornton v. Garcini*, 928 N.E.2d 804, 811-12 (Ill. 2010). Accordingly, the "defendant is required to raise a claim for a setoff in the pleadings to give the plaintiff notice and an opportunity to defend against the claim." *MidAmerica Bank, FSB v. Charter One Bank*, *FSB*, 905 N.E.2d 839, 848 (Ill. 2009). BNY and BOA did not seek a setoff in the pleadings in this case, and they therefore may not pursue the Iroanyahs here for the amounts owed under the mortgage loans.

### Conclusion

For the foregoing reasons, Iroanyahs are awarded $29,156.25 in fees and $711.46 in costs, for a total award of $29,867.71. BOA's share of the total award is $13,433.86, and BNY's share is $16,433.85.

January 24, 2013                    _____
                                          United States District Judge